UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOHN P. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 21-160-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Plaintiff John Harris filed this civil action, challenging the denial of his application for Disability Insurance Benefits by the Social Security Administration. He has now moved for summary judgment. [Record No. 13] Harris argues that the administrative law judge ("ALJ") assigned to the administrative proceeding did not properly evaluate his subjective complaints of pain or the medical evidence. He further contends that the ALJ's decision is not supported by substantial evidence. The Acting Commissioner of Social Security has filed a cross-motion for summary judgment, arguing that the ALJ's decision is supported by substantial evidence. [Record No. 15]

The Acting Commissioner's motion will be granted because the ALJ properly considered Harris' subjective complaints, properly evaluated the medical opinions in the record, and her decision is supported by substantial evidence.

I.

Harris applied for Title II Disability Insurance Benefits under Title II of the Social Security Act (the "Act") on July 8, 2019. He alleged a disability onset date of November 30,

2013, that was later amended to December 1, 2018. [Administrative Transcript, "Tr." 15, 155] The Social Security Administration denied Harris' application initially and upon reconsideration. [Tr. 65, 74] Harris then requested an administrative hearing before an ALJ, which was held on August 26, 2020. [Tr. 31, 97] ALJ Mary Ellis Richardson issued a written opinion following the hearing, concluding that Harris was not disabled. [Tr. 12-28] The Appeals Council thereafter denied Harris' request for review. [Tr. 1] Thus, Harris has exhausted his administrative remedies and this matter is ripe for review. *See* 42 U.S.C. § 405(g).

## II.

Harris is a 52-year-old male with limited education. He attended school through the 8th grade and never received his GED. [Tr. 35, 37] He previously held jobs doing manual labor, including operating heavy equipment in coal mines and in the logging industry. [Tr. 35, 39] Harris alleges that he suffers from back and neck pain, and anxiety. [Tr. 40] As noted, he applied for benefits on July 8, 2019, asserting that he had the following impairments: hypertension, cervicalgia, anxiety, major depression, hyperlipidemia, fatigue, morbid obesity with alveolar hypoventilation, low back pain, obstructive sleep apnea, and arthritis. [Tr. 155] Harris stated in a pain and daily activities questionnaire that he had constant and immobilizing neck, back, and leg pain that prevents him from performing any physical activities. [Tr. 208] He contends that the pain started in about 2000. [Tr. 208]

Most of the treatment records in the administrative record reflect recurring exams at St. Charles CHC. On June 17, 2013, Harris saw Kellie Brooks, FNP-BC, for an annual checkup at St. Charles. Harris informed Brooks at the time of this examination that he had neck pain and back pain, but that he takes medication that helps relieve some of his pain. He was

diagnosed with heart disease, high blood pressure, renal disease, depression, headaches, neck pain, back pain and GERD. [Tr. 552] Brooks noted during a physical examination that Harris' neck was symmetric and supple, no mass or JVD was visible, and that he had a full range of motion to flexion, extension, and lateral rotation. [Tr. 556] Additionally, his gait was normal, and his cervical spine was stable. [Tr. 557] An examination of Harris' cervical spine did not show any deformities, misalignment, or mass; there was no tenderness in the spine; and his range of motion was normal. [Tr. 557]

Brooks noted following an examination on January 20, 2014, that Harris discussed having "low back pain for years," that was an "aching" type pain. [Tr. 524] Harris explained that he had been taking naproxen and stated that it helped with the pain. [Tr. 524] Brooks ordered an x-ray of Harris' cervical spine and pelvis in 2014. [Tr. 618] The x-ray of his cervical spine indicated no acute bony lesions, mild degenerative disc disease in the lower surgical region, significant degenerative disc disease at lumbosacral level, and normal soft tissue. [Tr. 618] The x-ray of his pelvis reflected no acute bony lesions, mild osteoarthritis of the hips, and significant osteoarthritis of the sacroiliac joints. [Tr. 619] Finally, an x-ray of his lumbar spine did not depict any acute bone changes and only minimal degenerative disc changes in the lower lumbar region. [Tr. 620]

Harris' treatment records from 2014 and 2015 reflect that doses of naproxen relieved the claimant's back and neck pain; however, he did not take the medication daily. [Tr. 384, 423] An inspection of Harris' cervical spine performed during a physical exam did not reveal any deformities, misalignment, or mass; and it was not tender to palpation. Harris' range of motion was normal and his cervical spine was stable. [Tr. 529] Harris followed-up with Brooks at regular intervals from 2014 to 2018. Treatment records indicated that he suffered

from low back and neck pain, but that there were no deformities, his gait was normal, and he had full range of motion.

For example, on November 27, 2018, Harris informed Brooks that he was sedentary and had low back pain, but that a non-steroidal anti-inflammatory medication helped relieve pain. [Tr. 481] Physical examination revealed full range of motion in Harris' neck with flexion, extension, and lateral rotation; and his gait was normal. Harris declined Brooks' referral to a behavioral health specialist to assist with motivation to lose weight and anxiety. [Tr. 485]

Harris followed-up with Brooks on November 6, 2019, January 1, 2020, March 10, 2020, continuing to complain of pain when he moved or stood. [Tr. 319, 325, 334] While Harris complained of back and neck pain during his appointments, Brooks noted each time that Harris had no symptoms of sciatica, joint pain, joint stiffness, limitation of joint movement, muscle pain or weakness. [Tr. 327, 334, 341] After a physical examination, his gait was described as normal. [Tr. 321, 328, 335, 342] Further, Harris' neck had full range of motion to flexion, extension, and lateral rotation; and palpation of his neck showed normal pulsation, no adenopathy, or mass. [Tr. 327] Brooks also noted that Harris' depression and anxiety seemed stable with medication. [Tr. 334, 339]

On August 18, 2020, Brooks completed a medical assessment of Harris' ability to do work-related activities. [Tr. 354] She noted that Harris' ability to lift, carry, stand, walk, and sit were impacted by his degenerative disc disease and "significant osteoarthritis of sacroiliac joints." [Tr. 354-55] She further indicated that Harris could occasionally lift 50 pounds and frequently lift 20 pounds. [Tr. 354] Brooks explained that Harris could sit for 4 hours in an 8-hour workday and could stand and walk for 3 hours in an 8-hour workday. [Tr. 354-55] She

also concluded that Harris could never climb, balance, stoop, crouch, kneel, or crawl. [Tr. 355] Additionally, Brooks opined that moving machinery and vibration would increase Harris' pain. [Tr. 355]

After reviewing the medical record on September 10, 2019, Bradley Stephan, M.D., concluded there was insufficient evidence to make an accurate residual functional capacity assessment. [Tr. 62] Upon reconsideration, Eduardo Haim, M.D., concluded that there was insufficient medical information to make a determination regarding Harris' physical complaints and potential disability.

Harris also submitted a functional report, explaining that he could not perform any physical activities due to his back and neck pain, and could not participate in any social activities because such inhibits his ability to function. [Tr. 207] Harris' wife completed a third-party functional report, stating that Harris' condition limited all of his activities. [Tr. 191] She explained he needed help with basic personal needs like bathing, dressing, and putting socks on. [Tr. 191] She noted that Harris did not enjoy life, help with household chores or yard work, or get much sleep. [Tr. 191] She explained that his back and neck pain limit all aspects of life. [Tr. 196]

Harris testified during a telephonic hearing that his back and neck pain have impeded his ability to work. [Tr. 40] He explained his back pain was a "six or seven [on a ten-point scale] most of the time." [Tr. 41] He also noted that he would take pain pills and use heating pads for some relief, but that they did not help much. [Tr. 42] He stated that his doctor recommended that he see a specialist for his pain, but that he had not yet made an appointment. [Tr. 43] Harris stated that he could stand for 20-30 minutes and walk for 10-15 minutes before he would need to sit down due to pain. [Tr. 45-46] He also explained that he has difficulty

dressing, bathing, and helping with household chores due to his back and neck pain. [Tr. 46] Harris testified before the ALJ that he had "nerves," meaning anxiety, but that he had not seen a mental health professional because they would not be able to help him. [Tr. 45] A Vocational Expert testified that there were jobs in the national economy including housekeeper cleaner, laundry sorter, or hand packer inspector that an individual with Harris' limitations could perform. [Tr. 54-55]

After considering all the testimony submitted, ALJ Richardson concluded that Harris was not disabled between December 1, 2018 (the alleged disability onset date) and December 31, 2018 (the date Harris was last insured). [Tr. 16] The ALJ held that Harris had not engaged in substantial gainful activity between these dates. [Tr. 18] ALJ Richardson found that Harris suffered from the following severe impairments: degenerative changes of the spine and right hip, osteoarthritis, obesity, hypertension, major depression, and generalized anxiety disorder. [Tr. 18] Additionally, the ALJ concluded that Harris did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 18]

ALJ Richardson explained that Harris had the Residual Functional Capacity ("RFC") to perform "light work," subject to the following exceptions:

> he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs and balance, stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to vibration and workplace hazards. In addition, the claimant is able to perform simple tasks with occasional interaction with coworkers and supervisors and no interaction with the general public and can tolerate occasional changes in the workplace.

[Tr. 20] The ALJ further concluded that Harris could not perform any past relevant work through the date last insured. [Tr. 22] Instead, the ALJ concluded that, based on his age,

education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Harris could perform. [Tr. 22]

### III.

A "disability" under the Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If a claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 404.1520(e). If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV.

Harris contends that the ALJ failed to properly evaluate his subjective complaints of pain and did not properly evaluate the medical evidence. Additionally, he argues that the ALJ's decision is not supported by substantial evidence.

i. <u>Subjective Complaints of Pain</u>

An ALJ must apply a two-step process for evaluating an individual's subjective complaints of pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 5180304 (Oct. 25, 2017); *Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). First, the ALJ must

conclude that there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). The ALJ must then consider whether the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms find support in the record. 20 C.F.R. § 404.1529(c).

Here, the ALJ properly utilized the two-step framework in analyzing Harris' subjective complaints of pain. The ALJ first concluded that Harris' medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. [Tr. 21] But Harris' statements concerning the intensity, persistence, and limiting effects of the alleged symptoms are not entirely consistent with the other evidence in the record. [Tr. 21]

ALJ Richardson compared Harris' x-rays that indicated mild degenerative changes, physical examinations that showed a normal gait and range of motion in his cervical spine, and a normal neurological exam to his statements that he could only stand for 20 to 30 minutes and could only walk for 10 to 15 minutes before needing to sit in drawing her conclusions regarding Harris' subjective complaints of pain. Additionally, while Harris testified about suffering from anxiety and depression, treatment notes indicated that medication helped improve his mood and his depression was only rated as mild. Harris also testified that while had been recommended to see a physical therapist and a mental health professional, he had not taken steps to see either.

Because the ALJ properly applied the two-step framework for evaluating subjective complaints of pain, and the medical record includes images showing mild impairments and normal physical evaluations, she properly evaluated Harris' subjective complaints of pain.

      ii.      <u>Medical Evidence</u>

Harris also contends that the ALJ failed to properly evaluate the report by Kellie Brooks and did not properly consider the medical evidence in the record. In considering medical opinions and evidence for claims filed after March 27, 2017, the regulations state that the ALJ "will not defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." § 404.1520c(a). Instead, an ALJ must consider the following factors when reviewing medical opinions: supportability; consistency; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose of the treatment relationship; extent of the treatment relationship; examining relationship; specialization; and other factors such as the source's familiarity with other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. § 404.1520c(c)(1)-(5).

Brooks completed a medical assessment of ability to do work-related activities and found that Harris' ability to lift, carry, stand, walk, and sit were all impacted by his degenerative disc disease and "significant osteoarthritis of sacroiliac joints." [Tr. 354-55] She concluded that Harris could occasionally lift 50 pounds and frequently lift 20 pounds. [Tr. 354] Brooks explained that Harris could sit for 4 hours in an 8-hour workday and could stand and walk for 3 hours in an 8-hour workday. [Tr. 354-55] She also concluded that Harris could never climb, balance, stoop, crouch, kneel, or crawl. [Tr. 355] Additionally, Brooks concluded that moving machinery and vibration would increase Harris' pain. [Tr. 355]

The ALJ determined that some of Brooks' proposed limitations were not persuasive because they were not supported by the medical evidence that included mild imaging findings and treatment notes that indicated Harris had normal gait, normal range of motion in his spine,

and normal neurological exams. [Tr. 21] However, the ALJ did find the other limitations included in the medical source statement somewhat persuasive. [Tr. 21]

ALJ Richardson considered the imaging records, physical evaluations, and other medical opinions in the record in reaching her conclusions. [Tr. 21] She compared the persuasiveness of Brooks and the state agency examiners' medical opinions to the medical evidence in the record. The ALJ reasoned that her RFC assessment was supported by the x-rays taken of Harris' right hip and spine, along with his physical evaluations and statements to his physicians that his pain was controlled with medication. [Tr. 22] In short, ALJ Richardson properly evaluated the medical evidence.

Finally, if an ALJ's decision is supported by substantial evidence, the decision must be affirmed, even if this Court would decide the case differently. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847 (6th Cir. 2010). Here, the ALJ's decision is supported by the imaging records, physical evaluations, and treatment notes included in the record.

Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff John Harris' Motion for Summary Judgment [Record No. 13] is **DENIED**.

2. Defendant Acting Commissioner of the Social Security Administration Kilolo Kijakazi's Motion for Summary Judgment [Record No. 15] is **GRANTED**.

3. The Commissioner's decision denying benefits will be **AFFIRMED** by a separate judgment to be entered this date.

Dated: March 16, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky